**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**COMMONWEALTH OF PENNSYLVANIA,**

**Plaintiff,**

v.

**CIVIL ACTION NO.**
**1:13 CV-02647-YK**

**GEISINGER HEALTH**
**SYSTEM FOUNDATION,**
**LEWISTOWN HEALTH CARE**
**FOUNDATION,**

**Defendants.**

## AMENDED FINAL ORDER

### I. Introduction

Plaintiff, the Commonwealth of Pennsylvania, filed its Complaint on October 25, 2013 under Section 7 of the Clayton Act, 15 U.S.C. §18, and under the common law of the Commonwealth of Pennsylvania alleging that the proposed acquisition of Lewistown Health Care Foundation and its affiliates including, Lewistown Hospital and Family Health Associates of Lewistown Hospital ("Acquired Parties") by Geisinger Health System Foundation ("GHSF") will substantially lessen competition in one or more relevant health care services markets. GHSF and the Acquired Parties contest the allegations of the Complaint and wish to assure the Commonwealth and the communities they serve that such acquisition, if permitted to proceed, will occur in accordance with their respective

missions and a commitment to the provision of high quality, affordable health care services to the community.

The parties, by their respective attorneys, have consented to the entry of this Final Order without trial or adjudication of any issue of fact or law, and without this Final Order constituting any evidence against, or any admission by, any party regarding any such issue of fact or law.  The essence of this Final Order is to enjoin GHSF, as parent of Geisinger-Lewistown Hospital and Geisinger Clinic, and Geisinger-Lewistown Hospital and Geisinger Clinic themselves, from certain practices and to continue  certain other practices subsequent to the acquisition of the Acquired Parties in order to settle the parties' differences with respect to  the alleged loss of competition  in the Complaint.

Therefore, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## II.  **Jurisdiction**

1.      This Court has jurisdiction  over the parties  and subject matter of this action pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§15 and 26). This Court has jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

## III.  **Definitions**

As used in this Final Order:

2.    "Acquire" means to purchase the whole or the majority of the assets, stock, equity, capital or other interest of a corporation or other business entity or to receive the right or ability to designate or otherwise control the majority of directors or trustees of a corporation or other business entity.

3.    "Acquired Party" or "Acquired Parties" means Lewistown Health Care Foundation, Lewistown Hospital, Family Health Associates of Lewistown Hospital, Health Enterprises, Inc. and Lewistown Ambulatory Care Corporation.

4.    "Anti-tiering or Anti-Steering Clause" means any written or unwritten agreement between a Health Care Provider and a Health Plan that prohibits the Health Plan from placing the Health Care Provider in a tiered Health Plan product for the purpose of steering members to lower cost Health Care Providers, or which requires that the Health Plan place the Health Care Provider in the most desired tier in a tiered Health Plan product.

5.    "Closing" means the satisfaction of all conditions and occurrence of all events necessary to transfer control of the Acquired Parties to GHSF.

6.    "Family Health Associates of Lewistown Hospital" ("FHA") is a multi-specialty physician group practice with approximately 10 primary care and 9 specialty physicians.   FHA is a non-profit, tax exempt, corporation with its principal address at 400 Highland Avenue, Lewistown, PA  17044.  FHA shall

refer to this entity pre-merger and which will be merged into Geisinger Clinic following Closing.

7.    "Geisinger Clinic" ("GC") is a multi-specialty physician group practice with more than 1000 primary care and specialty physicians. GC is a non-profit, tax exempt, corporation with its principal address at 100 North Academy Avenue, Danville, PA 17822 and includes employed physicians who provide healthcare service at various physician offices located in central and northeastern Pennsylvania for primary and specialty care.

8.    "Geisinger Health Plan" ("GHP") is a health plan licensed by the Pennsylvania Insurance Department.  GHP is a non-profit, tax exempt, corporation with its principal address at 100 North Academy Avenue, Danville, PA 17822. GHP provides insurance coverage in 43 counties in Pennsylvania.

9.    "Geisinger Health System" for purposes of this Final Order refers to the entire healthcare system comprised of the Geisinger Health System Foundation ("GHSF") as parent and all subsidiary corporate entities comprising the System.

10.    "Geisinger Health System Foundation" ("GHSF") means the non-profit, tax-exempt, corporation based in Danville, Pennsylvania, which is the parent corporation of GC and GHP and other Health Care Providers and related healthcare companies in central and northeastern Pennsylvania.

11.    "Geisinger-Lewistown Hospital" ("G-LH") refers to Lewistown Hospital after Closing, an entity of which GHSF will be the parent and will appoint the corporate members post-Closing, who will in turn appoint G-LH's Board of Directors.

12.    "Geographic Market" for purposes of this Final Order, but without constituting GHSF's  or the Acquired Parties'  agreement that the same is a relevant geographic market for antitrust purposes, means Mifflin and Juniata Counties.

13.    "Health Care Provider" means hospitals, laboratories, physicians, physician networks and other health care professionals.

14.    "Health Plan" means any type of organized health-service purchasing or third-party payment program, including, but not limited to, health insurance and managed-care plans, whether offered by government, for-profit or non-profit, third-party payors, Health Care Providers or any other entity, including Commercial, Medicare Advantage and Medicaid Managed Care Health Plan contracts for health care services including, inpatient and outpatient hospital services, physician services and other ancillary services.

15.    "Hospital" means a health care facility, licensed as an acute care hospital, having a duly organized governing body with overall administrative and professional responsibility and an organized professional staff that provides

24-hour inpatient care, that may also provide outpatient services, and that has as a primary function the provision of inpatient services for medical diagnosis, treatment and care of physically injured or sick persons with short-term or episodic health problems or infirmities.

16.   "LH Payor Contract" means a contract between Lewistown Hospital and a Health Plan for the furnishing of inpatient and/or outpatient health care services at Lewistown Hospital and for physician services at FHA, and that is currently in effect.   A LH Payor Contract includes contracts for Commercial, Medicare Advantage and Medicaid Managed Care products, unless specified otherwise.

17.   "Lewistown Health Care Foundation" ("LHF") means the non-profit, tax exempt, corporation based in Lewistown, Pennsylvania which owns and controls Lewistown Hospital,  FHA, Health Enterprises, Inc. and Lewistown Ambulatory Care Corporation.

18.   "Lewistown Hospital" ("LH") is a non-profit hospital organized under the laws of the Commonwealth of Pennsylvania, with its principal address at 400 Highland Avenue, Lewistown, PA 17044. LH is licensed for 123 beds.  G-LH refers to LH after Closing.

19.   "Most Favored Nations Clause" ("MFN") means any written or unwritten agreement between a Health Care Provider and a Health Plan that allows

the Health Plan to receive the benefit of a better payment rate, term or condition that the Health Care Provider gives to another Health Plan.

20.    "Primary Care Physician" ("PCP") means a physician practicing internal medicine, family practice and general practice to patients eighteen years of age and older or are otherwise deemed non-pediatric patients.

21.    "Restrictive Covenant" means any restriction including, but not limited to, a covenant not to compete, non-solicitation covenant or a non-interference covenant, which would limit a physician's ability to practice medicine.

## IV.  Terms

22.    From and after the Closing, for the period set forth below,  G-LH and GC, and GHSF as their parent, shall comply with the following to the extent the same are applicable to each of them:

23.    G-LH and GC and shall continue to provide the community they serve with quality, affordable health care services in accordance with their mission and as part of a health care system of which GHSF, a non-profit, tax exempt, corporation, is the parent.

24.    **Maintaining G-LH as an Acute Care Hospital**- GHSF, as the parent of G-LH, to the extent permitted by the Pennsylvania Department of Health, will maintain G-LH as a 123-bed acute care hospital, offering substantially the

same scope and level of services and programs as provided by LH at closing for at least eight (8) years, as GHSF and LHF have previously agreed.

25.  **Negotiations Between  G-LH, GC and Health Plans**

25.1.  G-LH and GC will honor all LH Payor Contracts through their existing terms, subject to any necessary consents being given by the respective Health Plans.  For purposes of this Final Order, automatic renewal or "evergreen" LH Payor Contracts will be kept in place for at least one (1) year after closing prior to G-LH or GC providing a termination notice.

25.2.  Prior to the expiration of the term of a LH Payor Contract or G-LH Health Plan contract or GC Health Plan contract, with respect to FHA or GC physicians in the Geographic Market where an existing GC contract did not previously exist ("Designated GC Contract"), if  G-LH or GC opts to terminate a LH Payor Contract, G-LH Health Plan contract or Designated GC Contract in the Geographic Market,  G-LH and GC will enter into good faith negotiations with such Health Plan for a new contract for services provided at G-LH and GC in the Geographic Market.  In the event of an impasse after sixty (60) days of negotiations, the Health Plan may, at its option, enter into the Third-Party Review Process with G-LH and GC in Paragraph 25.4.

25.3. Any Health Plan licensed by the Pennsylvania Insurance Department to serve the Pennsylvania Counties in the Geisinger Health System's 31-County Service Area and which has at least 5,000 covered lives in one or more of those counties seeking a first time contract with G-LH or GC for the Geographic Market may enter into good faith negotiations with G-LH and GC for a contract.  In the event of an impasse after sixty (60) days of negotiations, the Health Plan may, at its option, enter into the Third-Party Review Process with G-LH and GC as defined below. Geisinger Health System's 31-County Service Area refers to the counties listed on Attachment A.

25.4.  Third-Party Review Process is defined as follows:

A.     G-LH, GC and the Antitrust Section of the Attorney General have agreed on an independent consultant to review and validate the methodology G-LH and GC proposes be used during each year of this Final Order in negotiations with Health Plans in the Geographic Market, and that consultant will be the same one selected for said use in the consent order between the parties for the Geisinger-Bloomsburg Hospital transaction.  G-LH agrees to pay the reasonable fees and expenses for the services of such consultant, not to exceed $30,000 the first year, or $10,000 each following year.

B.     G-LH    will provide to the independent consultant its methodology for contract negotiations with Health Plans, based on a formula consisting of the operating costs of G-LH, including the capital investments and operating expenses made by GHSF through its affiliates and allocated based on the direct benefit of G-LH and the G-LH Board of Directors, *e.g.* for IT infrastructure, equipment, risk management and otherwise for G-LH to operate as a well-run community hospital; the Medicare and Medicaid shortfall, if any, of G-LH; a reasonable profit margin for similarly sized and well-run community hospitals; and efficiencies and cost savings from G-LH becoming a GHSF affiliate.  G-LH and the Health Plan will each also provide to the consultant acceptable contract terms and conditions. The consultant will review the methodology, including each of the above components, as well as the proposed contract terms and conditions as negotiated by G-LH and the Health Plan, as against comparable well-run community hospitals and either validate the proposed negotiation ranges and the appropriate contract terms and conditions or suggest revisions. Negotiation ranges may be in different forms, *e.g.* per diem, percent of Medicare, by DRGs, to reflect the predominant form(s) requested by Health Plans, and will include variation based on volume considerations.

10

C.     Costs or Medicare/Medicaid shortfalls, if any, for other GHSF affiliates shall not be included in the G-LH methodology, except for those operating expenses from services provided by GHSF affiliates directly for the benefit of G-LH as referenced in 25.4.B.

D.     GC will provide to the independent consultant its methodology in the Geographic Market for contract negotiations with Health Plans.  GC and the Health Plan will each also provide to the consultant acceptable contract terms and conditions for physician services in the Geographic Market.  The consultant will review the methodology and proposed contract terms and conditions, as negotiated by GC and the Health Plan for physician services in the Geographic Market, as against comparable physician practices, and either validate the proposed negotiation ranges and the appropriate contract terms and conditions or suggest revisions.

E.     After the initial sixty (60) day period of good faith negotiation between G-LH, GC and a Health Plan described in Paragraphs 25.2 and 25.3 above, G-LH, GC and a Health Plan will negotiate for an additional sixty (60) day period to reach a contract.  At the end of this sixty (60) day period, if the Health Plan's proposal is within the negotiated range and has acceptable contract terms and conditions, G-LH and GC  must accept such proposal with that Health Plan for a contract for services at G-LH and GC in

the Geographic Market.   Failure by G-LH and GC to accept a proposal offered by a Health Plan within the independent consultant's validated negotiation range and contract terms and conditions at the end of the additional sixty (60) day period is a violation of this Final Order.

F.     The validated negotiation range and contract terms and conditions, as well as any information shared with the Commonwealth or the independent consultant will not be disclosed to the Health Plan or anyone other than the parties.  If the Health Plan's offer of payment is under the validated negotiation range or contract terms and conditions, G-LH and GC are free not to contract with that Health Plan.

26.   **Other Agreements by G-LH and GC on Health Plan Contracts**

26.1.  G-LH and GC agree to continue the practice of the Geisinger Health System of not conditioning a contract for G-LH or GC services on a Health Plan's agreement not to contract with any other hospital, health system or other provider.

26.2.  G-LH and GC agree, as is Geisinger Health System's practice, not to prohibit physicians with G-LH privileges who are members of any GC affiliated physician hospital network from holding privileges at any acute care hospital or from participating in any other physician-hospital

networks, Health Plans or integrated delivery systems; provided, however, that this limitation shall not apply to physicians who are employees of GC.

26.3.  G-LH and GC agree, as is Geisinger Health System's practice, not to require a Health Plan to have a contract with any other GHSF affiliates as a condition of having a contract for G-LH or GC services.

26.4.  G-LH and GC are not prohibited from terminating for breach a LH Payor Contract or future contract for G-LH and GC services in accordance with the terms and conditions of the contract.

26.5.  G-LH and GC agree to continue the Geisinger Health System's practice of not entering into any agreement with any Health Plan (including GHP) that includes a MFN to the benefit of G-LH, GC or any Health Plan.   G-LH and GC may not renew or extend any agreement without abandoning any term or provision which constitutes an MFN.   G-LH and GC shall inform the Attorney General of the presence of a MFN in any existing agreement, by providing a list of such agreements to the Attorney General not more than sixty (60) days from entry of this Final Order.

26.6.  G-LH and GC agree to continue Geisinger Health System's practice of not entering into any agreement with any Health Plan (including GHP) that includes an Anti-tiering or Anti-steering clause which would

prohibit the Health Plan from steering members to lower cost Health Care Providers; provided, however, that any LH Payor Contracts in effect at closing that have such provisions will remain in effect for their term, but will not remain in effect upon any renewal, including automatic or evergreen, of LH Payor Contracts.

26.7.  G-LH and GC agree that they will ensure that for FHA Primary Care Physicians who accept employment with GC after Closing, and for full-time GC Primary Care Physicians with a primary work location in the Geographic Market, G-LH and GC will not change  Health Plan payments for those Primary Care Physician services, by billing those services as hospital-based or provider-based services in the Geographic Market.  G-LH and GC also agree they will not transfer diagnostic testing and other ancillaries from those offices, of former FHA Primary Care Physicians who accept employment with GC and GC Primary Care Physicians in the Geographic Market, to a G-LH in-patient setting that would result in the billing of Health Plans as if those services were delivered in a location other than the physicians' offices.

27.  **FHA**

27.1. As GHSF and LHF have previously agreed, GC will offer employment to all FHA employed physicians. Any FHA employed

physician choosing not to accept employment with  GC will be released from his/her existing Restrictive Covenant and may freely pursue medical practice in the community with continued privileges at G-LH, subject only to continued qualification.

27.2.  For those FHA Primary Care Physicians who choose to accept employment with  GC,  GC will not impose any Restrictive Covenants in those physician employment agreements until two years after the former FHA Primary Care Physicians are integrated into GC's  system of care on its IT Platform as evidenced by the effective date for  use of the EPIC electronic health record at the office site of the former FHA physician or the FHA  physician transferring to a GC office already on EPIC.

27.3.  For those FHA Primary Care Physicians who choose to accept employment with GC, GC will continue its practice of permitting its physicians to exercise their professional judgment regarding referral of patients for services, including maintaining their existing patient referral patterns established as FHA Primary Care Physicians, in their new employment as GC Primary Care Physicians, respecting patient preference.

28.  **Staff Privileges**

28.1. As GHSF and LHF have previously agreed, G-LH shall maintain an open medical staff and continue all categories of appointment

and staff privileges for all qualified physicians who have, staff privileges at LH.   G-LH shall also permit qualified physicians currently in, or who enter, the Geographic Market to apply for appointment and privileges at G-LH.

28.2.   As is the practice of Geisinger Health System, employment by GC or participation in GHP shall not be criteria for continuing or granting staff privileges at G-LH.

28.3.   G-LH agrees to continue the Geisinger Health System's practice of not conditioning staff privileges at G-LH on a physician's agreement not to practice at other hospitals.

28.4.   The parties agree that GHSF and G-LH may revise G-LH's medical staff bylaws and rules and regulations after Closing to ensure compliance with Pennsylvania Department of Health and Joint Commission licensure and accreditation requirements respectively including ensuring appropriate quality and experience standards are utilized in the credentialing process.

28.5.   Medical staff privileges at G-LH are for G-LH only and do not extend to other GHSF affiliated Hospitals.

29.   **Referrals and Transfers**

29.1.   G-LH agrees it will continue the practice within the Geisinger Health System of  transferring a patient, whether for diagnosis or treatment,

16

to a Hospital other than a GHSF affiliated Hospital or GHSF Health Care Provider if such transfer is requested by the patient, the patient's representative when such representative is authorized to make care decisions for a patient, or the patient's physician; provided that the patient is stable and that the transfer is medically appropriate and legally permissible.

29.2.  In the event a patient in need of transfer is covered by a Health Plan with which the proposed destination Hospital does not contract,  G-LH agrees it will continue Geisinger Health System's   practice to  transfer the patient  to a participating  facility (provided that the patient is stable and that the transfer is medically appropriate and legally permissible) unless (i) the patient or the patient's representative expresses a contrary preference  or (ii) otherwise approved by the patient's Health Plan.

29.3.  Nothing in this Paragraph shall require G-LH to make any inquiry concerning health insurance coverage in a manner that would violate the federal Emergency Medical Treatment and Active Labor Act ("EMTALA").

30.  **Ancillary Services**-  G-LH and GC shall continue Geisinger Health System's practice of not requiring any health care purchaser or patient to purchase durable medical equipment, nonemergency transportation or home health care services from a Health Care Provider affiliated with GHSF, G-LH or GC.

31.    **Binding on Successors and Assigns**- The terms of this Final Order are binding on  G-LH and GC, and GHSF as their parent, and to their successors and assigns, including, but not limited to, any person or entity to whom such entities may be sold, leased or otherwise transferred, during the term of the Final Order.  GHSF, G-LH and GC shall not permit any substantial part of G-LH or GC to be acquired by any other entity unless that entity agrees in writing to be bound by the provisions of this Final Order.

32.    **Complaint Procedure**- Any person, HealthCare Provider, Health Plan or consumer of medical services who wishes to report a possible violation of this Final Order shall send a written description of the alleged violation to the Chief Deputy Attorney General, Antitrust Section, Office of Attorney General, 14th Floor, Strawberry Square, Harrisburg, Pennsylvania 17120. The Office of Attorney General shall transmit the complaint, keeping confidential the name of the complainant, if necessary, to G-LH and GC.   G-LH and GC shall respond in writing to the complainant and to the Attorney General within thirty (30) days from the receipt of any complaint.  If the complaint is still unresolved, the Attorney General will attempt to negotiate a satisfactory resolution.  If G-LH and GC believe a complaint to be frivolous, they  may so advise the Attorney General and their obligations under this paragraph will be satisfied unless they are  otherwise advised by the Attorney General to respond more fully to the complaint.  G-LH

and GC  will cooperate with the Attorney General to attempt to resolve the complaint.

33.   **Compliance**- To determine or secure compliance  with this Final Order or if the Attorney General receives a complaint pursuant to Paragraph 32 of this Final Order, upon reasonable notice during normal business hours, any duly authorized representative  of the Attorney General shall be permitted:

    A.    access to all non-privileged books, ledgers, accounts, correspondence, memoranda, other records and documents, in the possession or under the control of GHSF, G-LH and GC, relating to any matters contained in this Final Order; and

    B.    to interview officers, managers or employees of GHSF, G-LH and GC regarding any non-privileged matters contained in this Final Order.

34.   **Settlement of Expenses-** Upon entry of this Final Order, GHSF shall pay a total of $ 50,000 toward reimbursement of the Attorney General's costs incurred to conduct its investigation, in settlement of the parties' respective expenses in connection with the investigation, which payment shall be used for future Public Protection Division purposes.  The parties shall determine their proportionate shares of the payment.

35.   **Enforcement** -   If the Attorney General believes that there has been a violation of this Final Order, GHSF shall be promptly notified thereof.   The Attorney General shall thereafter give GHSF a reasonable opportunity to cure any alleged violation without instituting legal action.   If the alleged violation is not substantially cured by GHSF within sixty (60) days of the notification, the Attorney General may thereafter seek to undertake any remedial action deemed appropriate.   This time period shall be extended in circumstances where the sixty (60) day period is not sufficient time to cure the alleged violation.

36.   **Limited Release-** This Final Order releases GHSF, G-LH and GC only for claims   the Attorney General may have in connection with GHSF's acquisition of the Acquired Parties, excluding any future claims, if applicable, with respect to hospital-based or provider-based billing.   All remedies, should other violations of the federal and state antitrust laws be found shall be available to the Attorney General and may include the seizure and divestiture of G-LH.   Nothing in this Final Order shall prevent the Attorney General from investigating and prosecuting GHSF, G-LH or GC for any other alleged violations of Federal and State antitrust laws.   Nothing in this Final Order shall authorize GHSF, G-LH or GC, their employees or subsidiaries, to engage in other conduct that would violate sections 1 or 2 of the Sherman Act. 15 U.S.C. §§ 1 or 2, or the Pennsylvania common law doctrine against monopolies and unfair restraints of trade.

37.   **Legal Exposure-** No provision of this Final Order shall be interpreted or construed to require GHSF, G-LH or GC to take any action, or to prohibit GHSF, G-LH or GC from taking any action, if that requirement or prohibition would expose GHSF, G-LH or GC to liability for negligence (including negligent credentialing or negligence in making referrals) or malpractice.  Further, this Final Order or any reports required hereunder  shall  not  be introduced  as evidence  and cannot be used for any purpose  or in any proceeding by a third party.

38.   **Notices**- All  notices  required  by this Final Order shall  be sent  by certified  or registered mail, return receipt requested, postage prepaid or by hand delivery to:

**If to the Attorney General:**

Chief Deputy Attorney General
Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120

**If to GHSF, G-LH and GC:**

David J. Felicio, Esq.
Chief Legal Officer
Geisinger System Services
100 N. Academy Avenue
Danville, PA 17822-4031

**Copy to:**

Wendelynne J. Newton, Esq.
Buchanan Ingersoll & Rooney PC

One Oxford Centre, 20th Floor
301Grant Street
Pittsburgh, PA 15219-1410

If to LHF, LH and FHA:

Kay Hamilton
CEO & President
Lewistown Health Care Foundation
400 Highland Avenue
Lewistown, PA  17044

Copy to:

Daniel M. Mulholland, III
Horty, Springer & Mattern
4614 Fifth Avenue
Pittsburgh, PA  15213

39.    **Averment of Truth**- GHSF, G-LH, GC and LHF aver that, to the best of their knowledge, the information they have provided to the Attorney General in connection with this Final Order is true.

40.    **Termination-** This Final Order shall expire on the eighth (8th) anniversary of its date of entry if it has not terminated prior to that time as provided in Paragraph 41.

41.    **Modification-** If the Attorney General, GHSF, G-LH or GC believes that modification or termination of this Final Order would be in the public interest, that party shall give notice to the other side, and the parties shall attempt to agree on a modification.  If the parties agree on a modification, they shall jointly petition

the Court to modify the Final Order. If the parties cannot agree on a modification, the party seeking modification may petition the Court for modification and shall bear the burden of persuasion that the requested modification is in the public interest.

42.   **Retention of Jurisdiction-** Unless this Final Order is terminated early pursuant to Paragraph 41, jurisdiction is retained by the United States District Court for the Middle District of Pennsylvania for eight (8) years to enable any party to apply to this Court for such further orders and directions as may be necessary and appropriate for the interpretation, modification and enforcement of this Final Order.

43.   **No Admission of Liability-** The Commonwealth, Attorney General, GHSF, G-LH and GC, desiring to settle their differences  without trial or adjudication of any issue of fact or law, have consented to entry of this Final Order, which is not an admission of liability by GHSF, G-LH or GC as to any issue of fact or law and may not be offered or received into evidence in any action as an admission of liability, whether arising before or after the transaction referenced herein.

44.   **Condition Precedent-** This Final Order shall become null and void if the Acquired Parties are not acquired by GHSF pursuant to the Comprehensive Integration and Merger Agreement, dated June 20, 2013, between GHSF and the

Acquired Parties, or if the Comprehensive Integration and Merger Agreement is terminated, enjoined or otherwise not performed.

45. **Counterparts-** This Final Order may be executed in counterparts.

46. **Attorney General's Representation-** The Attorney General represents that this Final Order is in the public interest.

**COMMONWEALTH OF PENNSYLVANIA**

**GEISINGER HEALTH SYSTEM FOUNDATION**

By:

    Kathleen G. Kane
    Attorney General
    (717)787-3391

By:  /s/ David J. Felicio

    David J. Felicio, Esq.,
    Chief Legal Officer
    Geisinger System Services
    100 N. Academy Avenue
    Danville, PA 17822-4031

    James A. Donahue, III
    Executive Deputy Attorney General
    Public Protection Division
    (717) 787-453

    /s/ Tracy W. Wertz
    Tracy W. Wertz
    Chief Deputy Attorney General
    Antitrust Section
    (717) 787-4530

Jennifer A. Thomson                        LEWISTOWN  HEALTH CARE
Senior Deputy Attorney General             FOUNDATION
Antitrust Section
(717) 787-4530


Attorneys for the Commonwealth       By:    /s/ Kay Hamilton
of  Pennsylvania                             Kay Hamilton
                                             President and CEO
Office of Attorney General                   Lewistown Health Care
14th Floor, Strawberry Square                Foundation
Harrisburg, PA  17120                        400 Highland Avenue
                                             Lewistown, PA  17044



                          So Ordered:


                          _____
                                      Judge U.S.D.J.

ATTACHMENT A

31 County Service Area

| |
|---|
| Bradford |
| Carbon |
| Lackawanna |
| Luzerne |
| Monroe |
| Pike |
| Susquehanna |
| Wayne |
| Wyoming |
| Clinton |
| Columbia |
| Lycoming |
| Montour |
| Northumberland |
| Schuylkill |
| Snyder |
| Sullivan |
| Tioga |
| Union |
| Blair |
| Cambria |
| Cameron |
| Centre |
| Clearfield |
| Elk |
| Huntingdon |
| Jefferson |
| Juniata |
| McKean |
| Miffin |
| Potter |